BADOUR v ZIFKIN

Docket No. 43289. Submitted February 7, 1980, at Detroit.—Decided
    March 18, 1980.

   Plaintiffs, George H. and Dorothy Badour, Jr., entered into a land
   contract to sell parcels #1, 4 and 5 of a large tract they owned
   to Loretta Zifkin. The contract limited the liability of the buyer
   in the event of default to the payments already made at the
   time of default, which the seller was entitled to keep. Loretta
   Zifkin assigned her interest with respect to the land contract to
   Hampton Estates Company, a Michigan copartnership consist-
   ing of Anthony V. Ciaramitaro and Leo Zifkin. An amendment
   to the land contract was entered into between the Badours and
   Hampton Estates for the purchase of parcels 2 and 3, which
   were conveyed to Hampton Estates in exchange for a promis-
   sory note signed by the copartners and their wives. Hampton
   Estates sold parcels 2 and 3 to Chateau Estates, a copartner-
   ship consisting of John A. Boll, Joseph P. Ministrelli, Charles
   Trombley and John Trombley. Chateau Estates agreed to pay
   certain obligations of Hampton Estates including the amount
   left owing on the amended land contract. Chateau Estates
   defaulted, and the Badours obtained a judgment of forfeiture
   on parcels 4 and 5 (parcel 1 having been previously transferred
   in fee). Plaintiffs then commenced an action against Leo Zifkin,
   Loretta Zifkin, his wife, Anthony V. Ciaramitaro, and Stepha-
   nie Ciaramitaro, his wife, on the promissory note. Loretta
   Zifkin was never personally served. Defendants filed a third-
   party claim against Chateau Estates and its partners. The
   Macomb Circuit Court, George R. Denewith, J., entered a
   judgment of no cause of action on the third-party complaint
   and a judgment against Leo Zifkin, Anthony V. Ciaramitaro
   and Stephanie Ciaramitaro on the note, holding:

      That the original land contract provided that parcels 1, 4 and
      5 were to be conveyed by warranty deeds, which were to be

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence §§ 1040, 1052, 1069 et seq.
[2] 46 Am Jur 2d, Judgments § 542 et seq.

placed in escrow to be released upon payment to the Badours of $4,000 per acre;

That, at the time that this land contract was assigned to Hampton Estates, the copartnership was negotiating for an FHA loan for the purpose of constructing a trailer park upon the subject property. This endeavor required the purchase of the entire five parcels of plaintiff's property;

That, to this end, the Badours and Hampton Estates amended the land contract to include parcels 2 and 3. The amended contract provided for the conveyance of parcels 2 and 3 upon the payment of a promissory note for $22,515 by the Ciaramitaros and Zifkins on or before February 24, 1975;

That, to secure a loan commitment from FHA, however, Hampton Estates had to obtain an immediate release of parcels 1, 2 and 3 from the land contract. Fee title to parcel 1 was obtained by Hampton's promise to pay the Badours $176,000 out of money secured from the FHA guaranteed mortgage. Fee title to parcels 2 and 3 was obtained at the time of execution of the aforementioned promissory note by the principals of Hampton. The release of these properties occurred at the same time as execution of the amended land contract;

That, therefore, when the amended land contract was assigned to Chateau Estates, although it purported to deliver an interest in parcels 2 and 3, it did not, as fee title to parcels 2 and 3 was in Hampton Estates in exchange for the promissory note of its principals. Foreclosure upon the amended land contract by the Badours against Chateau Estates, then, did not preclude the Badours from proceeding against Hampton Estates on the promissory note. And, as a consequence, the Zifkins and Ciaramitaros were jointly responsible for the note to the Badours.

Defendants Ciaramitaro appeal. *Held:*

1. The forfeiture proceeding for the recovery of parcels 4 and 5 did not bar the subsequent proceeding on the promissory note.

2. Since the land contract and promissory note were ambiguous, the trial court did not err in permitting the introduction of parol evidence to explain the relation of the parties and the attending circumstances as an aid to interpreting or construing the ambiguity.

3. Failure to obtain a judgment against one of four obligations who are liable on a promissory note jointly and severally by the terms of the note does not render the judgment against the other obligors ineffective.

Affirmed.

1. EVIDENCE — PAROL EVIDENCE — AMBIGUITIES.
   Parol evidence is competent to show the relations of parties and
   attending circumstances as an aid in interpreting or construing
   a written instrument which is uncertain and ambiguous.

2. JUDGMENTS — JOINT AND SEVERAL LIABILITY.
   Failure to obtain a judgment against one of four obligors who are
   liable on a promissory note jointly and severally by the terms
   of a note does not render a judgment against the other obligors
   ineffective.

*Giltner, Walsh, Charters & Parker, P.C.,* for
plaintiff.

*Stephen A. Crane,* for defendants Ciaramitaro.

Before: N. J. KAUFMAN, P.J., and D. E. HOL-
BROOK, JR. and R. M. MAHER, JJ.

PER CURIAM. Defendants · Anthony V. Ciarami-
taro and Stephanie Ciaramitaro appeal as of right
from an August 29, 1978, decision of the Macomb
County Circuit Court awarding plaintiffs George
and Dorothy Badour $22,515, with interest, on a
promissory note executed on April 15, 1971, by Leo
Zifkin and Loretta Zifkin, his wife, and Anthony
V. Ciaramitaro and Stephanie Ciaramitaro, his
wife.

On February 25, 1970, plaintiffs, George and
Dorothy Badour, entered into a land contract to
sell 71.51 acres of land they owned in Hampton
Township, Bay County, Michigan, to Loretta Zif-
kin. This land consisted of parcels #1, 4 and 5 of a
larger unit owned by plaintiffs. The land contract
contained a provision limiting liability of the par-
ties in the event of breach. The purchaser's liabil-
ity was limited to the down payment and any
additional payments made on the land contract.
The seller's remedy for default was the retention
of any and all sums paid under the contract.

On February 5, 1971, Loretta Zifkin assigned

her right, title and interest with respect to the land contract to Hampton Estates Company, a Michigan copartnership consisting of Anthony V. Ciaramitaro and Leo Zifkin. On April 15, 1971, an amendment to the land contract was entered into between the Badours and Hampton Estates Company. The amendment provided for the additional purchase of parcels 2 and 3 of plaintiffs' property.

However, at the time the land contract amendment was executed, the Badours conveyed parcels 2 and 3 to Hampton Estates. In return, the Zifkins and the Ciaramitaros executed a promissory note to the Badours in the amount of $22,515, payable on or before February 24, 1975, with interest at seven percent per annum.

On September 12, 1973, Hampton Estates Company sold the property described in the amended land contract to Chateau Estates, a Michigan copartnership consisting of John A. Boll, Joseph P. Ministrelli, Charles Trombley and John Trombley. Chateau Estates assumed and agreed to pay certain obligations of Hampton Estates Company, including payment of an indebtedness in the principal amount of $95,795 in accordance with the terms and conditions of the amended land contract.

Chateau Estates subsequently defaulted on the amended land contract. The Badours brought a forfeiture action on the land contract against Chateau Estates, seeking to proceed against parcels not previously conveyed to Hampton Estates. An amended judgment of forfeiture was granted in the 74th District Court of Bay County on November 4, 1975, providing for forfeiture of the property described in the complaint. On June 22, 1976, the Badours commenced this action for recovery on the promissory note against the Zifkins, the Ciara-

mitaros and Chateau Estates. The Ciaramitaros filed a third-party complaint against Chateau Estates. A bench trial was held on August 22, 1978.

The trial court awarded recovery to the Badours against the Zifkins and the Ciaramitaros but dismissed the Ciaramitaros' third-party complaint against Chateau Estates. In essence, the court found:

That the original land contract provided that parcels one, four and five were to be conveyed by warranty deeds, which were to be placed in escrow to be released upon payment to the Badours of $4,000 per acre;

That, at the time that this land contract was assigned to Hampton Estates, the copartnership was negotiating for an FHA loan for the purpose of constructing a trailer park upon the subject property. This endeavor required the purchase of the entire five parcels of plaintiffs' property;

That, to this end, the Badours and Hampton Estates amended the land contract to include parcels two and three. The amended contract provided for the conveyance of parcels two and three upon the payment of a promissory note for $22,515 by the Ciaramitaros and Zifkins on or before February 24, 1975;

That, to secure a loan commitment from FHA, however, Hampton Estates had to obtain an immediate release of parcels one, two and three from the land contract. Fee title to parcel one was obtained by Hampton's promise to pay the Badours $176,000 out of money secured from the FHA guaranteed mortgage. Fee title to parcels two and three was obtained at the time of execution of the aforementioned promissory note by the principals of Hampton. The release of these properties occur-

red at the same time as execution of the amended land contract;

That, therefore, when the amended land contract was assigned to Chateau Estates, although it purported to deliver an interest in parcels two and three, it did not, as fee title to parcels two and three was in Hampton Estates in exchange for the promissory note of its principals. The forfeiture action upon the amended land contract by the Badours against Chateau Estates, then, did not preclude the Badours from proceeding against Hampton Estates on the promissory note. And, as a consequence, the Zifkins and Ciaramitaros were jointly responsible for the note to the Badours.

The Ciaramitaros take issue with this conclusion. Their first contention is that the summary forfeiture proceedings on the land contract barred the subsequent action on the promissory note.

The trial court found that the promissory note involved a separate transaction dealing with separate parcels from those covered under the land contract. Thus, the forfeiture against Chateau did not include a forfeiture on parcels two and three. They were no longer under the land contract due to their release and conveyance by deeds from the Badours at the time of their receipt of the promissory note on April 15, 1971.

We have reviewed the district court record and found that the forfeiture in favor of the Badours against Chateau Estates provided for recovery of only parcels four and five of the amended land contract. This supports the trial court's conclusion that parcels two and three were conveyed when the promissory note were executed. We reject defendants' argument that the forfeiture proceedings barred plaintiffs' action on the note. In a similar situation in *McBride v Arends,* 79 Mich App 440;

263 NW2d 5 (1977), this Court found that two separate contracts existed and that the summary proceedings resulting in the forfeiture of the land contract did not bar subsequent action on the bill of sale, promissory note and security agreement. The same conclusion is in order herein.

The defendants' next contention is that the trial court erred in permitting the introduction of parol evidence to explain the terms of the unambiguous amended land contract and promissory note.

We find, however, that the amended land contract and the promissory note were ambiguous. The trial testimony of plaintiffs' attorney indicated that, although parcels two and three were added to the description of property in the amended land contract, the deeds were transferred at the time the note was given and the amendment to the land contract was drafted. The plaintiffs' attorney further related that the note was intended to pay for the release of parcels two and three from the land contract. The trial testimony of George Badour reiterated these assertions. He stated that he deeded parcels two and three in exchange for the promissory note, that the language "to further secure same" on the note was understood by him to provide the Badours with additional security, and that the amendment to the original land contract to include the $22,515 was for bookkeeping purposes only.

There were other indications that the amended land contract did not transfer the interest it purported to transfer. One such example is the fact that plaintiffs' forfeiture proceeding against the amended land contract assignee, Chateau Estates, only encompassed parcels four and five of the subject property.

Since the land contract and promissory note

were ambiguous and since parol evidence is competent to show the relations of parties and attending circumstances as an aid in interpreting, or construing, a written instrument which is uncertain and ambiguous, *Piasecki v Fidelity Corporation of Michigan,* 339 Mich 328, 337; 63 NW2d 671 (1954), we find the trial court did not err in permitting the introduction of parol evidence herein.

Lastly, defendants claim that the plaintiffs, by electing to sue all of the four obligors jointly in one suit and then failing to obtain a proper judgment against one of them, rendered the judgment against the remaining three obligors unenforceable. Specifically, defendants argue that the fact that Mrs. Zifkin, a joint obligor under the note, was not properly served with process renders any judgment obtained against the remaining three obligors ineffective.

We find this issue without substance. The promissory note, by its very language, rendered its co-obligors *jointly and severally* liable. Plaintiffs initiated this action against these four co-obligors *jointly and severally.* Defendants' arguments speak to a situation involving joint liability alone. In that situation, the common-law rule of required joinder would be in effect to support defendants' claim. However, where liability is joint and several, the obligors may be proceeded against jointly or severally. See *J. A. Fay & Co v James Jenks & Co,* 78 Mich 312; 44 NW 380 (1889). Therefore, plaintiffs' failure to obtain service of process over one of the co-obligors would not serve to defeat their claim.

Affirmed.